UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LARRY BROWN,

                                    Plaintiff,

                    vs.                                              9:07-CV-842
                                                                     (J. Hurd)

DR. MICHAEL F. HOGAN, et al.,

                                    Defendants.

_____

LARRY BROWN, Plaintiff *Pro Se*
JUSTIN C. LEVIN, Assistant Attorney General for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636

(b) and Local Rules N.D.N.Y. 72.3(c).

Plaintiff is a former inmate of the Department of Correctional Services

(DOCS) who is now involuntarily confined at Central New York Psychiatric Center

("CNYPC").  In this civil rights complaint, he alleges that there is no grievance

policy or procedure at CNYPC, and he has been denied access to the courts in

violation of his constitutional rights.  Plaintiff seeks *only* injunctive relief.

(Complaint ("Compl.") at ¶ 27). (Dkt. No. 1).

Presently before the court is defendants' motion for summary judgment

pursuant to FED. R. CIV. P. 56. (Dkt. No. 45).  Plaintiff has cross-moved for summary

judgment. (Dkt. No. 46).  For the following reasons, this court recommends that

defendants' motion for summary judgment be granted, and the case be dismissed as to all defendants.

## DISCUSSION

1.     **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact.  FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the "'the pleadings, depositions, answers to interrogatories, and admissions on the file, together with any affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-movant bears the burden of proof at trial, the moving party may show that he is entitled to summary judgment by either (1) pointing to evidence that negates the non-movant's claims or (2) identifying those

portions of the non-movant's evidence that demonstrate the absence of a genuine issue of material fact. *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006) (citing *Celotex Corp*., 477 U.S. at 23). The second method requires identifying evidentiary insufficiency, not merely denying the opponent's pleadings. *Id*.

If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*. A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## 2.    Facts

Plaintiff was previously incarcerated at Attica Correctional Facility. (Dkt. No. 2 at 1). On February 23, 2007, at the expiration of his fifteen (15) year criminal sentence,[1] he was involuntarily committed to CNYPC  pursuant to New York Mental Hygiene Law section 9.27 in order to participate in the Sex Offender Treatment Program ("SOTP"). (Compl. at ¶ 8); (Maxymillian Dec'l at ¶¶ 3-5)(Dkt. No. 45). Plaintiff claims that when he arrived at CNYPC, several of his personal items were missing. *Id*. at 2. Plaintiff completed a New York State Department of Correctional Services ("NYSDOCS" or "DOCS") Inmate Claim Form on April 3, 2007, and listed

---

[1] Plaintiff states that he was convicted of first degree rape and two counts of first degree sodomy.  (Dkt. No. 2 at 1).

eighteen items with an approximate value of $189.95.  (Levin Dec'l at Ex. A)(Dkt. No,. 45).  Plaintiff apparently sent the form to Attica Correctional Facility since the form was stamped "received" by the Attica Correctional Facility Business Office on April 6, 2007.  *Id*.

On April 5, 2007, plaintiff wrote a letter to defendant Dr. Donald Sawyer, the Executive Director at CNYPC, requesting information about how to file a "Formal Grievance". (Compl. at Ex. B).  Plaintiff stated that there were "several continuing incidents which have affected me personally."  *Id*.  Plaintiff stated that CNYPC employees told plaintiff that there was no policy or procedure for patients to file grievances.  *Id*.

In a second letter to Dr. Sawyer dated April 9, 2007, plaintiff stated that he had been visited by a CNYPC employee, Mr. Fogg,[2] who allegedly told plaintiff that CNYPC did not have a Grievance Policy or Procedure, but Mr. Fogg did have several forms titled "Patient Complaint." (Compl. at Ex. D).  However, in his letter, plaintiff stated that Mr. Fogg refused to give plaintiff a Patient Complaint Form. *Id*. Plaintiff then listed several complaints about his housing, and requested that Dr. Sawyer direct Mr. Fogg to provide plaintiff with ten Patient Complaint forms. *Id*.  At the end of the April 9 letter, plaintiff characterized the letter as an "appeal of Mr. George Fogg's determination of April 6, 2007," and requested information about "the person or body" from whom he could seek an appeal of this matter, if needed.

---

[2] Mr. Fogg is not named as a defendant in this case.

*Id*.

In this complaint, plaintiff claims that when Dr. Donald Sawyer failed to respond to plaintiff's April 9, 2007 letter, he "appealed" by writing a letter, dated April 23, 2007, to defendant Dr. Michael M. Hogan, the Commissioner of the Office of Mental Health ("OMH"). (Compl. at ¶ 12).  Plaintiff's April 23, 2007 letter to Dr. Hogan does not mention the specific issues that plaintiff raised in the letter to Dr. Sawyer, but instead argued that Dr. Sawyer was required to assist civilly confined patients in the preparation and filing of "meaningful" legal papers by providing adequate law libraries or adequate assistance from individuals "trained in the law." (Compl. at Ex. E).  Plaintiff also asserted that patients who are involuntarily confined "must be afforded the same rights and protections under state and federal law, as those confined in state and federal prisons." *Id*.  Plaintiff complained to Dr. Hogan that Dr. Sawyer denied plaintiff the right to legal materials and access to the courts. *Id*.

On May 21, 2007, plaintiff wrote to Dr. Terri Maxymillian, Director of plaintff's SOTP program at CNYPC, regarding the property that was allegedly lost in the transfer from Attica.  (Compl. at Ex. C).  Plaintiff complained about the absence of a law library and legal services at CNYPC.  *Id*.  Plaintiff explained that he had been able "to initiate[3] the action," but was "unable to prepare all the necessary

---

[3]In their Local Rule 7.1 (a)(3) statement, defendants state that this language indicates that plaintiff "successfully commenced a claim in the Court of Claims concerning his lost property dispute with DOCS".  (Dkt. No. 45, Local Rule 7. 1(a)(3) Statement at ¶ 30).  Plaintiff denies this, and states that this language only "refers to the claim process at Attica.  The material sought

paperwork needed to perfect a claim." *Id*.  Plaintiff requested Dr. Maxymillian's

assistance to obtain legal resources, pens and pencils, and a typewriter. *Id*.

On May 23, 2007, James Doherty of the Office of Mental Health responded to

plaintiff's April 23, 2007 letter on behalf of Dr. Hogan. (Compl. at Ex. A).  Mr.

Doherty stated that civil hospitals are not required to have a law library accessible to

patients. *Id*.  Mr. Doherty also stated "[u]pon admission, patients are provided with

the grievance procedures," and that if plaintiff no longer had his copy of the

procedures, he could ask his therapist or team leader for a new copy. *Id*.

Plaintiff makes two claims in this court.  Plaintiff's first claim appears to be

that CNYPC lacks a grievance procedure, and that plaintiff is still unable to file a

grievance, complaining about the "conditions of his confinement."  (Compl. at ¶ 20).

Plaintiff asserts that he has the right to challenge defendants' decisions, and that this

right has been violated. (Compl. at ¶¶ 17-18).  Plaintiff's second claim is that

defendants failed to provide him with certain office supplies and legal publications

and have interfered with plaintiff's access to the New York State courts.  Plaintiff

argues that although he was able to "initiate a claim," he was unable to prepare the

necessary paperwork needed to bring a timely action against DOCS for his property,

and was thus, unable to recover for his loss. (Compl. at ¶ 25).  Plaintiff argues that

the claims are related because defendants' failure to allow plaintiff to grieve their

---

is to initiate a claim within the New York Court of Claims. . .  I was forced settle [sic] my lost
property claim because I lacked the necessary materials to proceed to the Court of Claims."  (Dkt.
No. 48 at ¶ 16).

decisions  denied plaintiff access to legal materials, allegedly  resulting in plaintiff's

inability to access the courts.  *See* Compl. at ¶¶ 17, 23.

## 3.      CNYPC Grievance Procedure

Plaintiff argues that he is confined to a maximum security facility, and that he

is entitled to the same "civil rights as those enjoyed by both prisoners of the state of

New York and pre-trial detainees, who are confined and subjected to the same

conditions."  (Dkt. No. 2 at 2-3).  Therefore, plaintiff argues that CNYPC should

have a grievance policy or procedure which will allow the patients to complain about

the conditions of their confinement. (Compl. at ¶ 18).

The Fourteenth Amendment requires the state to assume responsibility for "the

safety and well-being" of people in its custody, and that responsibility extends to

involuntarily committed psychiatric patients. *Cerbelli v. City of New York*, 600 F.

Supp. 2d 405, 413 (E.D.N.Y. 2008)(citing *Youngberg v. Romeo*, 457 U.S. 307, 315

(1982)).  This requires the State to provide adequate food, clothing, and medical

care. *Youngberg*, 457 U.S. at 315.  However, the law is well-settled in the prison

context that inmates do ***not*** have a constitutional right to grievance procedures.

*Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *Davis v. Buffardi*, No.

0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y.

May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a

constitutionally protected right") (citations omitted).  Furthermore, a violation of the

inmate grievance procedures does ***not*** give rise to claim under section 1983. *Cancel*

*v. Goord*, No. 00. CIV. 2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at \*3 (S.D.N.Y. Mar. 29, 2001).

Thus, even assuming that inmates at CNYPC have the same rights as those confined pursuant to criminal convictions, there is no constitutional right to any grievance procedure, and assuming that a grievance procedure exists, there is no constitutional right, protecting the plaintiff from defendants' violation of that procedure.

In any event, plaintiff is factually incorrect in his claim that CNYPC does not have a policy in place to address institutional complaints.  Defendants have submitted a section of the CNYPC Risk Management Program Policy and Procedure Manual titled "Inpatient Complaints." (Levin Dec'l at Ex. D (Dkt. No. 45).  The manual outlines three different ways in which patients are informed of their right to submit complaints: (1) during the orientation process when patients are admitted to the unit; (2) an instructive poster on a bulletin board in each day room; and (3) at "Patient Government Meetings." *Id*. at 2.  The manual also states three different ways that patients may submit "Complaints and/or Concerns": (1) by writing a letter to certain individuals listed on the first page of the policy statement; (2) by making a telephone call to any of four different offices; (3) or by "[r]egister[ing] the complaint verbally via staff or visitors." *Id*.  The final page of the policy has sections titled "Processing Complaints" and "Appeals".  *Id*. at 3.

In his response in opposition to defendants' motion for summary judgment,

8

plaintiff concedes that he received a copy of the relevant section of the CNYPC Risk

Management Program Policy and Procedure Manual at the end of July 2007 from the

New York State Defenders Association, Inc.[4] (Dkt. No. 48 at 4).  Plaintiff states that

up until that point, he "had not seen these documents and did not know the formal

procedure for making a patient complaint at CNYPC."  *Id*.  Plaintiff reiterates his

argument that defendant Sawyer "refused to provide plaintiff with the complaint

policy" which would have allowed plaintiff to challenge the conditions of his

confinement.  *Id*. at 4-5.

The court notes, however, that whether or not plaintiff ***understood*** that there

was a procedure for making complaints at CNYPC, plaintiff was, nonetheless, able to

complain about the conditions of his confinement.  Under the existing policy, a

complaint may be made by writing a letter to the "Executive Director." (Levin Dec'l

Ex. D at 1).  In this case, plaintiff wrote two letters to defendant Dr. Sawyer, the

Executive Director at CNYPC.  (Compl. at Exs. B & D).  Plaintiff also wrote letters

to defendants Dr. Hogan and Dr. Maxymillian.  Plaintiff was following the

appropriate grievance procedure, even though he may not have been aware of it.

Plaintiff argues that he was not provided a copy of the "Patient Complaint

form" in order to make institutional grievances.[5]  (Compl. at ¶ 11).  The policy does

---

[4] The court also notes that plaintiff was deposed in this action.  A copy of the deposition transcript has been included in support of defendants' motion. (Levin Dec'l, Ex. B (Depo.)).

[5] At his deposition, plaintiff testified that the reason that he wanted to file a grievance when he first requested information about the grievance process, was due to some alleged inappropriate conduct by a CNYPC employee. (Depo. at 48-52).

not require the use of the "Patient Complaint form" (Levin Dec'l Ex. D), and plaintiff

concedes that no one told him that he was required to use the form. (Depo. at 86).

The fact that plaintiff did not receive a response to his letters, or that he did not

receive the response that he wanted is irrelevant to whether the policy existed.

Finally, plaintiff is requesting only injunctive relief.  Since it is clear that there

is a procedure for making complaints *and* plaintiff concedes that he was ultimately

informed of the procedure, plaintiff has received all the relief that he requested.

There is no genuine issue of material fact, and defendants' motion for summary

judgment on this claim may be granted and the claim dismissed.

**4.     Access to Courts**

Plaintiff's second claim is that he was denied access to the courts because he

was unable to prosecute his claim for lost property against DOCS in the New York

Court of Claims. (Compl. at ¶¶ 24-25 & Ex. C).  Plaintiff claims that he was unable

to prosecute his claim in the Court of Claims because defendants failed to provide

plaintiff with, and denied plaintiff's requests for, certain legal publications and

resources, and supplies like pens, pencils, and a typewriter. (Compl. at ¶¶ 22-25 &

Ex. C).  In his response, plaintiff argues that as a result of his inability to litigate the

claim, he was forced to accept a "settlement" from the state. (Dkt. No. 48 at ¶ 16).

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that access

to the courts is a fundamental right that requires prison authorities to "assist inmates

in the preparation and filing of meaningful legal papers by providing prisoners with

adequate law libraries or adequate assistance from persons trained in the law."

Inmates do not, however, have a free-standing right to a law library or legal

assistance. *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  Law libraries and legal

assistance programs are "not ends in themselves, but only the means for ensuring 'a

reasonably adequate opportunity to present claimed violations of fundamental

constitutional rights to the courts.'" *Id.* (quoting *Bounds*, 430 U.S. at 825).  Law

libraries are not required if the inmate has other means of obtaining access to courts.

An inmate alleging a denial of access to courts must show ***actual injury*** as a

result of the deficient access to courts. *Lewis*, 518 U.S. at 351.  The ***cause*** of the

injury must be inadequacy of the access. *Id*.  Plaintiff must show that a non-frivolous

legal claim was frustrated or impeded due to the actions of prison officials.

*Warburton v. Underwood*, 2 F. Supp. 2d 306, 312 (W.D.N.Y. 1998)(quoting *Lewis v.

Casey*, 518 U.S. at 353).  It has also been held that a plaintiff alleging interference

with his access to courts "must have been without the opportunity to overcome the

impediment before suffering the actual injury." *Odom v. Baker*, 02-CV-757, 2008

U.S. Dist. LEXIS 7704, *14-15 (W.D.N.Y. Jan. 31, 2008)(citing *Howard v.

Leonardo*, 845 F. Supp. 2d 943, 947 (N.D.N.Y. 1994)).

In this case, the court notes that residents of CNYPC have access to Mental

Hygiene Legal Services (MHLS). (Maxymillian Dec'l at ¶ 27 & Ex. C).  Defendant

Maxymillian explains that MHLS is an agency of New York State, independent of

CNYPC that provides CNYPC residents with "protective legal services, advice, and

assistance, including representation, with regard to the resident's hospitalization."[6] (Maximillian Dec'l at ¶¶ 28-29).  Residents are entitled to contact MHLS either in person, by telephone, in writing, by requesting hospital staff to do so, or through family members. *Id*. at ¶ 32 & Ex. C.  By affording inmates access to MHLS attorneys, CNYPC is fulfilling any requirement to provide its patients access to the courts, and additional law libraries would not be required.

In addition, plaintiff states that he wanted to litigate a claim in the New York Court of Claims, and argues that his access to that court was unconstitutionally limited.  However, defendants submit a memorandum to plaintiff from the Principal Account Clerk at Attica Correctional Facility dated August 9, 2007. (Levin Dec'l Ex. B).  The memorandum offers plaintiff $80.00 as a settlement for two pairs of boots and a padlock. *Id.*  The memorandum states that "[i]f you will not accept this amount for your settlement, your next course of action is the court of claims [sic]." *Id.*  At his deposition, plaintiff stated that he settled his claim for $80.00. (Depo. at 82).

Plaintiff appears to have settled his property claim with the facility and never even attempted to file an action in the Court of Claims.  Plaintiff's conclusory statement that he was "unable" to file an action because of some failure by CNYPC to provide "legal" materials cannot succeed.  Plaintiff was compensated for his loss administratively, and no more is required by the Constitution.  The defendants could

---

[6] While MHLS attorneys may only be available to represent patients on issues relating to the fact and conditions of their confinement in CNYPC, and may not be available to challenge a property claim, the fact that plaintiff's property claim was settled is an alternative basis to dismiss plaintiff's complaint.

not have known that plaintiff wanted to file an action in the Court of Claims.  In any event, the Constitution does not require unlimited access. *Lewis v. Casey*, 518 U.S. at 351.  The fact that plaintiff thinks that he could have gotten more money if he filed an action in the Court of Claims cannot form the basis for a constitutional denial of access to courts.

Defendants also argue that plaintiff is able to obtain "on his own accord" any legal resources or books as long as they are not considered contraband.  (Dkt. No. 45, *Memo*. at 10).  Defendants argue that under CNYPC rules, plaintiff is able to possess up to 15 books in his room, and that CNYPC provides community typewriters, and access to pencils and "flex" and "felt tip" pens. *Id*.  Defendants argue that plaintiff's claim is, therefore, moot.  *Id*. at 8-11.  Plaintiff argues that even if he now has access to these items, defendants have "clearly conced[ed] that plaintiff did not have access as he complained upon [sic] his civil action complaint."  (Dkt. No. 48 at ¶ 11).  Defendants clearly do not "concede" this point, and plaintiff forgets that he is asking only for injunctive relief, and thus, the fact that he knows that he now has access to these materials renders his claim moot.

The court finds that there is no genuine issue of material fact to be resolved with respect to this claim, defendants' motion for summary judgment should be granted, and the complaint dismissed in its entirety.

**WHEREFORE** it is hereby

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No.

45) be **GRANTED**, and the complaint be **DISMISSED IN ITS ENTIRETY**; and it is further

RECOMMENDED, that plaintiff's cross-motion for summary judgment (Dkt. No. 46) be **DENIED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Date: September 8, 2009

_____

Hon. Gustave J. DiBianco
U.S. Magistrate Judge